UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

GOVERNMENT EMPLOYEES INSURANCE CO.,
GEICO INDEMNITY CO., GEICO GENERAL
INSURANCE COMPANY and GEICO CASUALTY
CO.,

                        Plaintiffs,         **REPORT AND**
                                                     **RECOMMENDATION**
  –against–                                        10–CV–5409 (SLT) (JMA)

NATALIO DAMIEN, M.D., SERGEY GABINSKY,
M.D., VITAL RADIOLOGY, P.C., AURORA
RADIOLOGY, P.C., CITY MEDICAL
DIAGNOSTICS, P.C., ORACLE RADIOLOGY OF
NY, P.C., RAPID MEDICAL DIAGNOSTICS, P.C.,
ALBA MANAGEMENT, INC., ARTHUR
BOGORAZ, SERGE DENEVICH, STELLA
MEDNIK, ESQ., STELLA MEDNIK, ESQ., P.C.
a/k/a ADVANCED LEGAL SERVICES, P.C.,

                              Defendants.
----------------------------------------------------------------X

A P P E A R A N C E S:

Barry I. Levy, Esq.
Michael A. Sirignano, Esq.
Justin A. Calabrese, Esq.
Ryan Goldberg, Esq.
Max Gershenoff, Esq.
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11556
    *Attorneys for Plaintiffs*

**AZRACK, United States Magistrate Judge:**

On November 22, 2010, Government Employees Insurance Company ("GEICO"), GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company (collectively, "plaintiffs") commenced this action against Natalio Damien, M.D., and Sergey Gabinsky, M.D. (collectively, "Nominal Owner Defendants"); Vital Radiology, P.C., Essential

Radiology, P.C., Aurora Radiology, P.C., City Medical Diagnostics, P.C., Oracle Radiology of NY, P.C., and Rapid Medical Diagnostics, P.C., (collectively, "P.C. Defendants"); Alba Management, Inc., Arthur Bogoraz ("Bogoraz"), and Serge Denevich (collectively, "Management Defendants"); and Stella Mednik, Esq. ("Mednik") and Stella Mednik, Esq., P.C. a/k/a Advanced Legal Services, P.C. ("Mednik P.C.") (collectively, "Lawyer Defendants") seeking a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202; alleging violations of 18 U.S.C. §§ 1962(c) and (d), the Racketeer Influenced and Corrupt Organization ("RICO") statutes; and bringing state law claims of fraud, unjust enrichment, and violation of judiciary law. See Compl., ECF No. 1. Plaintiffs properly served all defendants with a copy of the complaint and summons. ECF Nos. 6, 18, 65.

Bogoraz, Mednik, and Mednik P.C. failed to appear or otherwise defend themselves upon service of the summons and complaint. Plaintiffs moved for entry of default on January 19, 2011, and the Clerk of the Court entered the defaults on January 20, 2011. ECF Nos. 66–71. On April 15, 2011, plaintiffs moved for default judgment as to defendants Bogoraz, Mednik, and Mednik P.C. Pl.'s Mot. for Default J., ECF No. 88.

The Honorable Sandra L. Townes referred plaintiffs' motion for default judgment to me for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). Order, April 20, 2011, ECF No. 89. For the reasons set forth below, I respectfully recommend that: (1) default judgment be entered against defendants Bogoraz, Mednik, and Mednik P.C.; (2) plaintiffs be awarded $1,896,680.88 from defendant Bogoraz, reflecting $710,391.22 in damages, $90,668.00 in interest, and $1,095,621.66 in treble damages; and (3) that Mednik and Mednik P.C. be held jointly and severally liable with Bogoraz for $376,093.24 of that judgment, reflecting $345,184.00 in damages and $30,909.24 in interest.

2

## I. BACKGROUND

Plaintiffs claim that Management Defendants are not and never have been licensed physicians, and that they unlawfully incorporated, owned, and controlled a series of medical professional corporations, including P.C. Defendants. Compl. ¶¶ 16–17. Plaintiffs allege that Management Defendants created and operated the P.C. Defendant entities for the sole purpose of submitting false claims for payment under New York's no–fault motor vehicle insurance laws. Id. ¶ 15. Plaintiffs' complaint lists the statutory requirements for the submission of valid claims and explains why each P.C. Defendant was ineligible to submit claims.[1] Id. ¶¶ 26–28.

Plaintiffs allege that on multiple occasions Management Defendants made copies of one fraudulent claim and submitted it for payment several times. Id. ¶ 89. Plaintiffs claim that defaulting defendant Bogoraz "masterminded" the fraudulent insurance scheme along with the other Management Defendant. Id. ¶ 15.

Plaintiffs further allege that the Management Defendants entered into a venture with Lawyer Defendants to prepare, file, and pursue collection arbitrations on behalf of P.C.

---

[1] The complaint alleges with specificity the acts associated with each of P.C. Defendants. For reference, the Court includes the following listing of the specific allegations with regard to each P.C. Defendant entity:

| Entity | Allegation | Complaint Paragraph |
|---|---|---|
| Vital Radiology, P.C. and Essential Radiology | Fraudulent incorporation, not owned by physicians, siphoning of profits by Management Defendants, scheme to purchase medical license to obtain status as a medical professional entity | 51-55 |
| Aurora Radiology, P.C. | Scheme to purchase medical license, fraudulent ownership | 62-65 |
| Oracle Radiology of NY | Forgery of ownership documents, illegal ownership | 69-71 |
| City Medical Diagnostics, P.C. | Scheme to purchase medical license to obtain status as a medical professional entity, siphoning of profits by Management Defendants | 75-78 |
| Rapid Medical Diagnostics, P.C. | Scheme to purchase medical license obtain status as a medical professional entity | 81-82 |

Defendants for claims that had been rejected by GEICO. Id. ¶ 90. Specifically, Bogoraz directly engaged attorneys to commence arbitration proceedings on behalf of each P.C. Defendant. Id. ¶¶ 58, 66, 73, 79, 85; see also id. ¶¶ 90–96. Plaintiffs claim that since 2008, Lawyer Defendants have commenced and pursued approximately 285 individual arbitrations against GEICO seeking payment on behalf of P.C. Defendants. Id. ¶ 58, 66, 73, 79, 85, 292. They allege that Bogoraz orchestrated the collection scheme by working with Lawyer Defendants to develop and implement a fraudulent arbitration protocol in order to conceal their fraudulent collection on nonreimbursable billing. Id. ¶ 94. Plaintiffs allege that these arbitrations were pursued with the aim of collecting as much money as possible through fraudulent billing before plaintiffs realized that the claims were fraudulent. Id. ¶ 90.

Plaintiffs aver that Lawyer Defendants knew that P.C. Defendants were not entitled to collect the benefits, yet pursued the arbitrations anyway. Id. ¶ 292. In addition, plaintiffs allege that Lawyer Defendants made misrepresentations in their arbitration filings, including: (1) misrepresenting that P.C. Defendants were eligible to bill for the benefits; (2) falsely asserting that they had an attorney–client relationship with P.C. Defendants; and (3) representing that the filings were made in good faith. Id. ¶¶ 92, 94–95.

Plaintiffs allege that as a result of Management Defendants' fraudulent operation of P.C. Defendants and submission of fraudulent claims, plaintiffs suffered damages in the form of benefits paid out on P.C. Defendants' fraudulent claims. Id. ¶ 102. Plaintiffs also claim damages in the form of mandatory, nonrefundable fees paid to the American Arbitration Association (the "AAA") as the result of arbitration filings made on behalf of P.C. Defendants. Id. ¶ 102.

Plaintiffs' claims against all of the defendants have been resolved, except for claims against defaulting defendants Bogoraz, Mednik, and Mednik P.C.[2]

## II. DISCUSSION

Plaintiffs move for an entry of default judgment against defendants Bogoraz, Mednik, and Mednik P.C. pursuant to Federal Rule of Civil Procedure ("F.R.C.P.") 55(b)(2). A two–step process exists for obtaining a default judgment. James v. Arango, No. 05–CV–2593, 2011 WL 1594832, at *7 (E.D.N.Y. Mar. 28, 2011). First, when a party has failed to plead or otherwise defend, the clerk enters the party's default pursuant to F.R.C.P. 55(a). Second, the moving party may make an application for entry of default judgment pursuant to F.R.C.P. 55(b).

In this case, the clerk entered default as to Bogoraz, Mednik, and Mednik P.C. on January 20, 2011. ECF Nos. 69–71. Presently before the Court is plaintiffs' motion for entry of a default judgment as to defendants' liability and plaintiffs' damages.

---

[2] For reference, the Court includes the following listing of the dates and means of resolution for each defendant.

|  | Date | Means | ECF |
|---|---|---|---|
| **Nominal Owner Defendants** |  |  |  |
| Natalio Damien, M.D. | August 5, 2011 | Stipulation of dismissal | 98-1 |
| Sergei Gabinsky, M.D. | February 9, 2011 | Global resolution and permanent injunction | 77 |
| **P.C. Defendants** |  |  |  |
| City Medical Diagnostics, P.C. | February 8, 2011 | Stipulation and global resolution | 77 |
| Rapid Medical Diagnostics, P.C. | February 8, 2011 | Stipulation and global resolution | 77 |
| Aurora Radiology, P.C. | May 12, 2011 | Judgment of $219,000 | 91 |
| Oracle Radiology of NY | May 24, 2011 | Judgment of $316,000 | 93 |
| Vital Radiology, P.C. & Essential Radiology | June 1, 2011 | Judgment of $2,169,000, jointly and severally | 95 |
| **Management Defendants** |  |  |  |
| Alba Management | August 15, 2011 | Stipulation of dismissal | 99-1 |
| Serge Denevich | August 15, 2011 | Stipulation of dismissal | 99-2 |
| Arthur Bogoraz | - | - | - |
| **Lawyer Defendants** |  |  |  |
| Stella Mednik, Esq. | - | - | - |
| Mednik P.C. | - | - | - |

**A. <u>Liability</u>**

A default constitutes an admission of all well–pleaded factual allegations in the complaint. <u>First Mercury Ins. Co. Inc. v. Schnabel Roofing of Long Island, Inc.</u>, No. 10–CV–4398, 2011 WL 883757, at *1 (E.D.N.Y. Mar. 11, 2011). Upon default, the court accepts the allegations pertaining to liability as true. <u>Au Bon Pain Corp. v. Artect, Inc.</u>, 653 F.2d 61, 65 (2d Cir. 1981). In considering whether to grant a default judgment, a court must be "guided by the same factors which apply to a motion to set aside entry of a default." <u>First Mercury</u>, 2011 WL 883757, at *1. These factors include: (1) whether the default was willful; (2) whether ignoring the default would prejudice the opposing party; and (3) whether the defaulting party has presented a meritorious defense. <u>Action S.A. v. Marc Rich & Co.</u>, 951 F.2d 504, 507 (2d Cir. 1991); <u>see also</u> <u>First Mercury</u>, 2011 WL 883757, at *1.

First, "[a] default judgment is ordinarily justified where a defendant fails to respond to the complaint." <u>Sec. and Exch. Comm'n v. Anticevic</u>, No. 05–CV–6991, 2009 WL 4250508, at *2 (S.D.N.Y. Nov. 30, 2009) (citing <u>Bermudez v. Reid</u>, 733 F.2d 18, 21 (2d Cir. 1984)). Bogoraz, Mednik, and Mednik P.C. were properly served with a copy of the summons and complaint and failed to respond. Therefore, that failure supports a conclusion that the default was willful. Second, in light of the defaulting defendants' failure to respond, there is no indication that requiring plaintiffs to take further steps prior to a determination on the merits would be effective in eliciting a response.[3] <u>See</u> <u>Mason Tenders Dist. Council v. Duce Constr. Corp.</u>, No. 02–CV–9044, 2003 WL 1960584, at *3 (S.D.N.Y. Apr. 25, 2003). As a result, denying this motion would be unfairly prejudicial to the plaintiffs. <u>See</u> <u>id.</u> Third, Bogoraz, Mednik, and Mednik P.C. have failed to

---

[3] Attached to their September 30, 2011, letter advising the Court of developments regarding the defaulting defendants, plaintiffs submitted a news article suggesting that Bogoraz had fled the country and was recently arrested in Puerto Rico by the New York Attorney General's office. Pl.'s Ltr., ECF No. 103.

present any defense. Therefore, the relevant factors guiding the Court's decision indicate that default judgment would be proper in these circumstances.

The only question remaining, then, is whether plaintiffs have provided adequate support for their claims. James, 2011 WL 1594832, at *3 (citing Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992)). For purposes of determining liability, "[a] court accepts as true all well–pleaded allegations against a defaulting defendant." Finkel v. Romanowicz, 577 F.3d 79, 82 n.6 (2d Cir. 2009). I will analyze each of the claims against the defaulting defendants in turn.

**1. Common Law Fraud Claims against Bogoraz, Mednik, and Mednik P.C.**

A claim for common law fraud in New York requires facts demonstrating by clear and convincing evidence: (1) a material misrepresentation or omission of fact; (2) made with knowledge of its falsity (i.e., scienter); (3) reasonable reliance on the part of the plaintiff; and (4) damages caused by the misrepresentation or omission. Schaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2d Cir. 1997).

**a. Bogoraz**

Plaintiffs allege an elaborate scheme by the Management Defendants, including Bogoraz,[4] to defraud GEICO and receive benefits on fraudulently submitted insurance claims. Plaintiffs have established the element of material misrepresentation by showing that the Management Defendants continually caused the submission of benefits requests on behalf of entities, including P.C. Defendants, which were not statutorily eligible to receive the benefits. See Compl. ¶¶ 44–85

---

[4] Although plaintiffs explicitly identify Bogoraz by name as having committed several of the acts relating to the fraudulent claims, they contend that "Management Defendants" committed many of the other acts. That moniker includes Bogoraz, who has not come to court to dispute his actual involvement in each of the individual acts alleged. Therefore, taking the well-pleaded allegations as true, this Court must conclude that Bogoraz participated in each of the fraudulent acts "Management Defendants" are alleged to have undertaken.

(laying out the details of the fraudulent scheme relating to each entity). Plaintiffs have also established that the Management Defendants knew these entities were ineligible because they took steps to create the impression of eligibility by purchasing medical licenses and concealing their own operation of the entities. See supra n. 1.

Plaintiffs have established reasonable reliance by including in their complaint an explanation of the statutory and contractual requirements obligating GEICO to respond promptly to facially valid claims submitted under the statutory scheme. Compl. ¶ 102. Moreover, plaintiffs have demonstrated damages caused by those misrepresentations by alleging a total amount of benefits paid out to the fraudulent entities, as well as attaching to their complaint lists of many of the claims paid out.[5] Id. ¶ 102.

Plaintiffs have also established the elements of common law fraud for the arbitration fees they paid out. Plaintiffs have demonstrated misrepresentation and scienter by alleging that Bogoraz directly engaged attorneys to file and pursue collection arbitrations for collection of claims he had orchestrated to be fraudulent. Id. ¶¶ 58, 66, 73, 79, 85.

Plaintiffs have established reasonable reliance and damages in relation to the arbitration fees by explaining the regulatory scheme governing the submission of claims for collection arbitration. Under the scheme, the costs associated with the arbitration process are borne by the

---

[5] As Exhibits 1-4 to their complaint, plaintiffs produced charts with entries logging a "representative sample" of the fraudulently submitted bills. Compl. Exs. 1-4. Each entry in these exhibits lists the GEICO claim numbers, the billing providers, the reference number for the claim document mailed, the date of service, CPT code, and amount billed. Id. As Exhibits 13, 14, and 14.1-5, plaintiffs included copies of several of the actual fraudulent submissions. These documents do not provide an exhaustive list of all of the fraudulently submitted bills. However, the Court has reviewed the exhibits and found them to be a satisfactory sample of a voluminous collection. Thus, taking the well-pleaded allegations as true, the Court is willing to accept plaintiffs' specific allegations regarding the representative sample as true for the entire set of allegedly fraudulent bills.

insurers in relation to the number of matters filed against them. Id. ¶¶ 34–37. Thus, plaintiffs have demonstrated that they had no choice but to pay the fees associated with the filings. Id.

Therefore, by accepting all well–pleaded allegations in the complaint as true, I hereby find that plaintiffs established Bogoraz' liability for common law fraud with regard to both the benefits plaintiffs paid out to P.C. Defendants and the arbitration fees plaintiffs paid to the AAA.

### b. Mednik and Mednik P.C.

According to plaintiffs, Lawyer Defendants are liable for common law fraud because they misrepresented to the AAA that they had valid claims and, as a consequence, plaintiffs were obligated to pay fees to the AAA as respondent for each of those claims.[6]

Plaintiffs have demonstrated scienter by alleging that Lawyer Defendants worked with Management Defendants to develop a system for submitting the claims for arbitration that was designed to conceal the ineligibility of the claims. Compl. ¶ 92. Plaintiffs established reasonable reliance by explaining the statutory structure that compels them to pay mandatory fees to the AAA whenever they are named as a respondent by a healthcare provider seeking collection on a no–fault benefits claim that GEICO has denied. Compl. ¶¶ 33–37.

Therefore, by accepting all well–pleaded allegations in the complaint as true, I hereby find that plaintiffs established Lawyer Defendants' liability for common law fraud in relation to the arbitration fees plaintiffs paid out on the fraudulent arbitration filings.

### 2. Unjust Enrichment Claims against Bogoraz

---

[6] Rather than explicitly stating that Mednik commenced each of the arbitration proceedings, plaintiffs allege that the proceedings were commenced by attorneys "including" Mednik or Lawyer Defendants. See Compl. ¶¶ 58, 66, 73, 79, 85. Neither Mednik nor Mednik P.C. responded to these allegations to dispute their actual involvement in each of the individual acts alleged. Therefore, taking the well-pleaded allegations as true, the Court must conclude that Mednik and Mednik P.C. undertook each of these fraudulent acts.

Under New York law, recovery for unjust enrichment requires establishing that: (1) the defendant benefitted; (2) at the plaintiff's expense; and (3) equity and good conscience requires restitution. Golden Pac. Bancorp v. F.D.I.C., 273 F.3d 509, 519 (2d Cir. 2001) (citing State v. Barclays Bank, 76 N.Y.2d 533, 561 (N.Y. 1990)).

Plaintiffs have demonstrated that Bogoraz benefitted because he and the other Management Defendants siphoned off the profits of P.C. Defendants. This benefit came at plaintiffs' expense because plaintiffs paid out benefits that were not eligible for payment. Compl. ¶ 61. Plaintiffs' complaint explains that the no–fault benefits system exists to provide an efficient mechanism for injured victims of motor vehicle accidents to receive healthcare services, and Bogoraz took advantage of this system for his own enrichment. Id. ¶ 23. Essentially, Bogoraz siphoned money out of a statutory scheme designed for the public good, intentionally duping an insurance company into paying him when he did not deserve payment—certainly equity and good conscience require restitution. Therefore, by accepting all well–pleaded allegations in the complaint as true, I hereby find that plaintiffs have established Bogoraz' liability for unjust enrichment with regard to the no–fault insurance benefits plaintiffs paid out to P.C. Defendants.[7]

### 3. RICO Claims against Bogoraz

To state a private claim for damages under RICO, plaintiffs must plead: "(1) the defendant's violation of § 1962; (2) an injury to the plaintiff's business or property; and (3) causation of the injury by the defendant's violation." Commercial Cleaning Servs. v. Colin Serv. Sys., Inc., 271 F.3d 374, 380 (2d Cir. 2001) (citing First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 767 (2d Cir. 1994)). Because civil RICO liability allows for treble damages, "it is an

---

[7] As discussed above, I have also found liability for these same benefits under common law fraud. As discussed later, this duplicative liability does not add to plaintiffs' award.

unusually potent weapon" requiring a court to give the allegations particular scrutiny.[8] Chubb & Son Inc. v. Kelleher, No. 92–CV–4484, 2006 WL 1789118, at *5 (E.D.N.Y. April 28, 2006) (quoting Schmidt v. Fleet Bank, 16 F.Supp.2d 340, 346 (S.D.N.Y. 1998)).

Plaintiffs pursue two causes of action under RICO: one under § 1961(c) (unlawful enterprise) for the fraudulently paid benefits, and one under § 1961(d) (conspiracy to engage in unlawful enterprise) for the arbitration fees. See Compl. ¶¶ 111–124, 140–153, 169–182, 198–211, 227–240, 256–269 (listing, for each P.C. Defendant, a claim under § 1961(c) and a claim under § 1961(d)).

### a. Unlawful Enterprise

For a § 1962(c) violation, the elements are: (1) the defendant; (2) through the commission of two or more predicate acts; (3) constituting a pattern; (4) of racketeering activity; (5) directly or indirectly participated; (6) in an enterprise; (7) the activities of which affected interstate commerce. James, 2011 WL 1594832, at *3 (citing Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir. 1993)).

Mail fraud is a racketeering activity. 18 U.S.C. § 1961(1) (2006). Pleading mail fraud requires: (1) the existence of a scheme to defraud; (2) the use of United States mails or interstate wire communications to further that scheme; and (3) evidence that defendants did so with a specific intent to defraud. Am. Arbitration Ass'n, Inc. v. Defonseca, No. 93–CV–2424, 1996 WL 363128, at *9 (S.D.N.Y. June 28, 1996). Plaintiffs have demonstrated that Bogoraz had a scheme to submit numerous fraudulent claims, and that many of those claims were submitted via U.S.

---

[8] Courts warn of the possibility that "garden variety" state law civil fraud will be couched as RICO claims in order to take advantage of the treble damages and attorneys fees provisions of the federal statutes. See, e.g., West 79th Street Corp. v. Congregation Kahl Minchas Chinuch, 2004 WL 2187069, at *5 (S.D.N.Y. 2004) (warning that "courts must be wary of putative civil RICO claims that are nothing more than sheep masquerading in wolves' clothing").

mail. See Compl. ¶¶ 111–124, Exs. 1–4. As described above, plaintiffs have shown intent to defraud because they detail with respect to each P.C. Defendant the steps taken by Management Defendants to fraudulently incorporate or fraudulently perpetuate the entities. See supra n. 1. These actions demonstrate all the elements of mail fraud.

Establishing a "pattern" of racketeering activity requires showing predicate acts that are related to one another, including a "closed period of repeated conduct." H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 240–41 (1989). Plaintiffs have established a pattern of mail fraud through the vast number of similar fraudulent claims filed by Management Defendants. Their "representative samples" list of related acts within the closed period of 2008, 2009, and 2010. See Compl. Exs. 1–4.

An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). In other words, the enterprise must be distinct from the pattern of racketeering activity. Chubb, 2006 WL 1789118, at *4. The Court agrees with plaintiffs that each medical professional entity operated by Bogoraz was an enterprise. In addition, the association of Bogoraz with Denevich as "Management Defendants" carrying out the scheme suggests that this core group and the medical professional entities existed as distinct from the pattern of fraudulent claims.

Therefore, plaintiffs have sufficiently pleaded a violation of § 1962(c).[9] Furthermore, they have shown that this violation directly caused them injury to their insurance business in the form

---

[9] The last element, that Bogoraz' pattern of racketeering activities directly affected interstate commerce, is also met. Not only did Bogoraz use the U.S. mail in the commission of his scheme, but the fraudulent claims were mailed from various locations in New York and paid out from a national insurance company with principal places of business in Maryland.

of benefits paid out. Compl. ¶ 102; see also discussion supra n. 5. Thus, plaintiffs have shown Bogoraz' liability under 18 U.S.C. § 1962(c) for the fraudulently obtained benefits.

### b. Conspiracy

The core of a RICO civil conspiracy claim is "an agreement to commit predicate acts." Morin v. Trupin, 835 F. Supp. 126, 135 (S.D.N.Y. 1993) (citing Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 25 (2d Cir. 1990)). Therefore, to establish liability for a RICO conspiracy, a complaint must "specifically allege such an agreement." Id.

Additionally, a RICO conspiracy claim must be founded on injury from overt acts in furtherance of the conspiracy, where the overt acts are themselves predicate acts listed in § 1961(1) as racketeering activity. Hecht, 897 F.2d at 25. In other words, there is no civil RICO standing based on injury from acts that are nonracketeering acts, even if those acts are done in furtherance of a RICO conspiracy. Id. This limitation ensures that the RICO conspiracy provision "targets RICO activities, and not other conduct." Id.

Here, plaintiffs established that Bogoraz initiated the collection arbitrations to further his overall scheme to collect as much money as possible on the fraudulent benefits. Compl. ¶ 90. These actions, although constituting common law fraud, do not fall within any of the categories of conduct listed in § 1961(1); the agreement in question was to commence arbitration proceedings in furtherance of a mail fraud scheme to collect on fraudulent benefits, but filing a misleading or bad faith arbitration proceeding is not a RICO act as defined by § 1961(1). Thus, I hereby find that plaintiffs cannot establish Bogoraz' liability for the arbitration fees under 18 U.S.C. § 1962(d).

### 4. New York Judiciary Law § 487 Claim Against Mednik and Mednik P.C.

Under New York law, a party can bring a civil action to recover treble damages from an attorney or counselor who "is guilty of any deceit or collusion, or consent to any deceit or

13

collusion, with intent to deceive the court or any party." N.Y. Jud. Law § 487 (McKinney 2005). An award of treble damages under § 487 is "punitive in nature." McCabe v. St. Paul Fire & Marine Ins. Co., 79 A.D.3d 1612, 1614 (4th Dep't 2010) (citing Amalfitano v. Rosenberg, 12 N.Y.3d 8, 12–15 (2009)). As plaintiffs point out in their letter of September 30, 2011, Ms. Mednik has already been disciplined by the New York Supreme Court Grievance Committee, the state entity responsible for overseeing her conduct as an attorney. Pls.' Ltr., ECF No. 103.

As discussed above, the Court concludes that Mednik and Mednik P.C. are liable under state law fraud for the arbitration fees that plaintiffs paid. Accordingly, I hereby find that liability under § 487 is unnecessary to grant plaintiffs relief, and therefore unnecessary to this default judgment.

### B. Remedies

Although the allegations of a complaint and memorandum of law pertaining to liability are deemed admitted upon entry of a default judgment, allegations related to damages are not. Credit Lyonnais Sec., Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). A court must conduct an inquiry to ascertain the amount of damages with reasonable certainty. Credit Lyonnais, 183 F.3d at 155 (citing Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)). The Second Circuit has approved the holding of an inquest by affidavit, without a hearing, as long as the court has "ensured that there was a basis for the damages specified in the default judgment." Transatlantic Marine, 109 F.3d at 111 (citation omitted). The Court did not hold a hearing, but will determine damages based on plaintiffs' submissions.

In a scheme where there are repeated fraudulent acts by multiple defendants, plaintiffs are entitled to recover once for every fraudulent act, and each defendant who participated in the

fraudulent act is jointly and severally liable for the amount of damage caused.[10] Chubb, 2006 WL 1789118, at *5 (explaining that in a scheme of fraudulently submitted claims, defendants who participated in the scheme were jointly and severally liable for all of the claims).

With respect to Bogoraz, plaintiffs request monetary damages in the amount of $710,391.22, representing the sum of the fraudulent benefits and arbitration fees paid, interest in the amount of $60,086.44, and treble damages on both the benefits and fees in the amount of $2,131,173.66.[11] Levy Decl. in Supp. of Pl.'s Mot. for Default J. ("Levy Decl.), Exs. F–G, ECF No. 88-2. With respect to Lawyer Defendants, plaintiffs request that they be held jointly and severally liable with Bogoraz for monetary damages in the amount of $345,184.00, interest in the amount of $33,563.01, and treble damages in the amount of $1,035,552.00. Levy Decl., Ex. G. To support their requests, plaintiffs provided the affidavit of Barry Levy, Esq., along with exhibits detailing the benefits payouts, the arbitration fees incurred, and proposed calculations of interest on the benefits and fees paid out by GEICO. Levy Decl., Exs. A–F.

As described above, plaintiffs have established Bogoraz' liability under RICO and New York state law for the fraudulently obtained benefits, and his liability under state law for the arbitration fees paid out. Plaintiffs submitted a report from the GEICO Claims Department setting forth the amount of payments made by GEICO to P.C. Defendants and to the AAA. Levy Decl., Ex. C. According to this report, plaintiffs paid out $365,207.22 on P.C. Defendants' claims, and

---

[10] In a case with numerous defendants where some, but not all, have defaulted, courts will typically enter default judgment as to liability but hold off on a determination of damages due to the danger of inconsistent judgments. Gesauldi v. MMK Trucking, Inc., No. 09-CV-1484, 2010 WL 361569, at *4 (E.D.N.Y. Aug. 24, 2010) (quoting Montcalm Publ'g Corp. v. Ryan, 807 F.Supp. 975, 978 (S.D.N.Y. 1992)). Here, however, claims against all of the other defendants have been resolved. See chart supra n. 2.

[11] In plaintiffs' memorandum in support of their motion for default judgment, plaintiffs requested reasonable attorneys' fees under 18 U.S.C. § 1962. Pls.' Mem. in Supp. of Mot. for Default J. 18, ECF No. 88. However, plaintiffs withdrew their request for attorneys' fees in a letter dated October 11, 2011. Pls.' Ltr., ECF No. 105.

paid $345,184.00 in arbitration fees. Accordingly, plaintiffs' compensatory damages from defendant Bogoraz total $710,391.22. Plaintiffs have also established Lawyer Defendants' common law fraud liability for the arbitration fees. Thus, Lawyer Defendants are jointly and severally liable with Bogoraz for $345,184.00 of the compensatory damages.

As discussed above, plaintiffs have also established Bogoraz' liability under RICO for the fraudulently obtained benefits. According to 18 U.S.C. § 1964(c), persons injured under 18 U.S.C. § 1962 may sue to recover "threefold the damages he sustains." Such an award is appropriate on default judgment. See, e.g., D'Orange v. Feely, 894 F. Supp. 159, 163 (S.D.N.Y 1995); Chubb, 2006 WL 1789118, at *5. Thus, because they have also established Bogoraz' liability under § 1962(c) for the amounts plaintiffs paid in fraudulent benefits, they are entitled to three times their damages, listed above as $365,207.22. Thus, plaintiffs have established that their treble damages under RICO, due in addition to the amount of compensatory damages, are $1,095,621.66.

Plaintiffs also seek to recover interest on their damages under N.Y. C.P.L.R. §§ 5001, 5004, which provide for the award of pre–judgment interest on compensatory damages. This statutory provision codifies "New York's prevailing policy . . . that 'interest must be added [in actions where persons are deprived of the use of money]' if we are to make the plaintiff whole." Newbro v. Freed, 409 F. Supp. 2d 386, 401–02 (S.D.N.Y. 2006) (quoting Mallis v. Bankers Trust Co., 717 F.2d 683, 695 (2d Cir. 1983) (alteration in original)). Federal courts apply this provision where parties are found liable for damages under New York law. Cf. Manufacturers Hanover Trust Co. v. Drysdale Sec. Corp., 801 F.2d 13, 28 (2d Cir. 1986) (declining to apply the New York provision because the lower court did not explicitly find liability under state law).

For Bogoraz' state law damages, plaintiffs have requested that interest be calculated beginning January 1st of the year following the year when the benefits or fees were actually paid, and ending March 31, 2011.[12] Levy Decl. The statute sets interest at a default rate of "nine percent per annum." N.Y. C.P.L.R. § 5004 (McKinney 2007). According to the Court's calculation, these figures result in $59,758.76 of interest on the fraudulent benefits payments, and $30,909.24 of interest on the arbitration fees.[13]

Plaintiffs have thus established that they are entitled to damages and interest of $424,965.98 for the fraudulent benefits, and damages and interest of $376,093.24 for the arbitration fees from Bogoraz. In addition, plaintiffs are entitled to $1,095,621.66 in treble damages from Bogoraz under the RICO statutes. Plaintiffs have also established Mednik's and Mednik P.C.'s liability for the arbitration fees under state law fraud. Therefore, Mednik and Mednik P.C. are jointly and severally liable with Bogoraz for the amount of $376,093.24.[14]

In sum, I hereby recommend that plaintiffs be awarded a total judgment of $1,896,680.88 from defaulting defendant Bogoraz, of which defaulting defendants Mednik and Mednik P.C. are jointly and severally liable for $376,093.24.

---

[12] According to the statute,

> [I]nterest on damages incurred . . . shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.

N.Y. C.P.L.R. § 5001(b) (McKinney 2007). Thus, plaintiffs' requested period is permissible under the statute.

[13] These figures arise from multiplying the damages from each period by 9%, then by the number of years between the accrual and March 31, 2011. For example, all of the fees paid out in 2008 accrue under plaintiffs' proposed system on January 1, 2009. Thus, they are multiplied by 9% and 2.25 (because there were two and a quarter years between January 1, 2009 and March 31, 2011).

[14] Plaintiffs also requested treble damages under N.Y. Jud. Law § 487. However, as discussed above, the Court declines to award damages under § 487.

### III. CONCLUSION

For the foregoing reasons, I respectfully recommend that: (1) default judgments be entered against defendants Bogoraz, Mednik, and Mednik P.C.; (2) plaintiffs be awarded $1,896,680.88 from defendant Bogoraz, reflecting $710,391.22 in damages, $90,668.00 in interest, and $1,095,621.66 in treble damages; and (3) that Mednik and Mednik, P.C. be held jointly and severally liable with Bogoraz for $376,093.24 of the judgment, reflecting $345,184.00 in damages and $30,909.24 in interest.

Plaintiff is directed to serve a copy of this report and recommendation on defendant and to promptly file proof of service by ECF. Any objections to this report and recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b), 72.

SO ORDERED.

Dated: November 3, 2011
       Brooklyn, New York

                                                          /s/
                                              JOAN M. AZRACK
                                              UNITED STATES MAGISTRATE JUDGE